```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
ELIZABETH DEMARIA,                                  :
                                                    :
                        Plaintiff,                  :
                                                    :       MEMORANDUM & ORDER
              -against-                             :       23-cv-7314 (DLI)(JRC)
                                                    :
NUTRITIONAL BEVERAGES, LLC;                         :
NUTRITIONAL BRANDS, INC.; and                       :
DANNA PRATTE,                                       :
                                                    :
                        Defendants.                 :
----------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

On September 29, 2023, Elizabeth DeMaria ("Plaintiff") filed the instant action against her former employer Nutritional Beverages, LLC, Nutritional Brands, Inc. ("Nutritional Brands and Beverages"), Jason Pratte, and Danna Pratte, Chief Executive Officer of Nutritional Brands and Beverages (collectively, "Defendants") alleging false imprisonment, intentional infliction of emotional distress, negligent supervision, assault and battery, and violations of the New York Labor Law ("NYLL") and New York State Human Rights Law ("NYSHRL") arising out of her termination from employment. Complaint ("Compl."), Dkt. Entry No. 1. On December 7, 2023, Plaintiff amended the complaint to clarify that Defendants are Arizona citizens. Amended Complaint, Dkt. Entry No. 16.

On December 29, 2023, Defendants moved to either: (1) dismiss the case for lack of personal jurisdiction and improper venue or (2) transfer the case to the United States District Court for the District of Arizona ("District of Arizona"). Defs.' First Mot. to Dismiss, Dkt. No. 19. On January 12, 2024, Plaintiff filed a second amended complaint that addressed part of Defendants' motion by removing: (1) Jason Pratte as a defendant; and (2) the negligent supervision and assault

and battery claims.  Second Amended Complaint ("SAC"), Dkt. Entry No. 22.

On January 23, 2024, Defendants filed a second motion to dismiss or transfer the case on the same grounds as the first motion.  Defs.' Second Mot. to Dismiss or Transfer ("Defs.' Mot."), Dkt. Entry No. 23.  On January 31, 2024, the Court bifurcated Defendants' motion and issued an Order to Show Cause why the case should not be transferred to the District of Arizona.  Jan. 31, 2024 Order.  Plaintiff responded to the Order and opposed Defendants' motion.  Pl. Opp'n ("Opp'n"), Dkt. Entry No. 25.  Defendants replied.  Reply, Dkt. Entry No. 26.  Before the Court is Defendants' second motion to dismiss or transfer the case.

On October 18, 2023, Nutritional Brands and Beverages filed a separate action in Arizona state court alleging that DeMaria submitted fraudulent business expenses prior to her termination. *See*, *Nutritional Brands, Inc., et al. v. DeMaria*, 2:23-cv-02405-JFM, Dkt. Entry No. 1-3.  On November 16, 2023, DeMaria removed that case to the District of Arizona.  *Id.*, Dkt. Entry No. 1. DeMaria moved to dismiss or transfer on February 1, 2024, arguing that the first filed rule requires that the Arizona case be transferred here.  *Id.*, Dkt. Entry No. 17.  That motion has yet to be decided.

For the reasons set forth below, Defendants' motion is granted, and this case is transferred to the District of Arizona.

## BACKGROUND

Plaintiff is a New York citizen.  *See*, SAC ¶¶ 9, 37.  All Defendants are Arizona citizens. *Id.* at ¶¶ 10–13.  From June 1, 2021 to August 16, 2023, Plaintiff was Defendants' Vice President of Sales and Marketing.  *Id.* at ¶¶ 30–31.  Plaintiff worked remotely from her home in New York approximately 75% of the time and traveled to Arizona and other locations for business 25% of the time.  *Id.* at ¶¶ 37–38.  Defendants knew that Plaintiff worked remotely but wanted her to relocate to Arizona. *Id.* at ¶¶ 40–41.  Plaintiff alleges that she told Defendants "several" times she

would not relocate and claims that similarly situated male employees were allowed to work remotely. *Id.* at ¶¶ 40–44, 48–54.

On August 16, 2023, Plaintiff attended a meeting with Defendant Pratte in Arizona. *Id.* at ¶ 70. Defendant Pratte confronted Plaintiff regarding: (1) whether and when she was planning to move to Arizona; and (2) allegedly fraudulent business expenses she submitted. *Id.* at ¶¶ 72–75. Jason Pratte, a nonparty employee, purportedly came into the meeting, verbally assaulted Plaintiff, and did not allow her to leave the room. *Id.* at ¶¶ 14, 71, 76–84. Defendants terminated Plaintiff's employment at the meeting. *Id.* at ¶¶ 76, 85. Plaintiff claims that she was terminated for: (1) failing to relocate; and (2) objecting to inappropriate workplace conduct such as racist remarks and improper disciplinary action taken against other employees. *Id.* at ¶¶ 56–69, 72–74, 109.

In support of the motion, Defendant Pratte submitted an affidavit attesting that: (1) Plaintiff's position required relocation to Arizona, Declaration of Danna Pratte ("Pratte Decl.") ¶ 6 & Ex. A; (2) Defendants hired Plaintiff based on assurances that she would relocate to Arizona, *Id.* at ¶¶ 7–9; (3) Defendant Pratte asked Plaintiff "repeatedly" about her progress in relocating, *Id.* at ¶ 11; (4) Plaintiff "led [Defendants] to believe" that she was planning to move, but was "delayed by personal considerations," *Id.*; and (5) Plaintiff looked at houses and schools in Arizona on several occasions. *Id.* at ¶¶ 12–13. Plaintiff did not submit any affidavit in response.

Plaintiff alleges that: (1) her termination constituted unlawful discrimination and retaliation pursuant to the NYSHRL; (2) Defendants committed false imprisonment and intentional infliction of emotional distress during her termination; and (3) Defendants violated the NYLL by paying her less than similarly situated male employees, withholding certain bonuses, and failing to provide proper wage documentation. *Id.* at ¶¶ 87–128.

3

**DISCUSSION**

I.     **Transfer of Venue Pursuant to § 1404(a)**

A district court may transfer a civil action to any other district where the action might have been brought, "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). When making a motion to transfer venue, "[t]he party requesting transfer carries the 'burden of making out a strong case for transfer.'" *Audiovox Corp. v. S. China Enter., Inc.*, 2012 WL 3061518, at *7 (E.D.N.Y. July 26, 2012) (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010)); *See also*, *In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp.2d 164, 168 (E.D.N.Y. 2006). At the same time, "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "In deciding a motion to transfer, a court may consider material outside of the pleadings." *Justiniano v. First Student Mgmt. LLC*, 2017 WL 1592564, at *1 (E.D.N.Y. Apr. 26, 2017) (citation omitted).

To determine whether a motion to transfer venue should be granted, the Court must apply a two pronged test: "(1) whether the action could have been brought in the proposed forum; and (2) whether the transfer would 'promote the convenience of parties and witnesses and would be in the interests of justice.'" *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp.2d 342, 347 (E.D.N.Y. 2012) (quoting *Clarendon Nat'l Ins. Co. v. Pascual*, 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000)).

The second prong of the test requires a case specific analysis involving consideration of the following nonexhaustive list of factors, none of which is dispositive: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the

4

relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *See*, *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp.2d 370, 373 (S.D.N.Y. 2006).

The parties do not dispute that this action could have been brought in the District of Arizona. Nutritional Brands and Beverages are Arizona citizens, and the claims arise out of DeMaria's employment there. Indeed, DeMaria's motion to dismiss or transfer the Arizona case was based entirely on the first filed rule, and did not contend either that venue was improper or personal jurisdiction was lacking. *See*, *Nutritional Brands, Inc., et al. v. DeMaria*, 2:23-cv-02405-JFM, Dkt. Entry No. 17. Since this action could have been brought in Arizona, the Court need only address whether the first filed rule applies, and weigh the remaining § 1404(a) factors.

### A.     The First Filed Rule

Plaintiff contends that this Court should adhere to first filed rule. The first filed rule is a well settled legal doctrine in the Second Circuit, instructing that "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or . . . special circumstances giving priority to the second." *First City Nat. Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (alterations in original and citation omitted). Proper application of the first filed rule requires that the first and subsequently filed cases have either identical or substantially similar parties and claims. *See*, *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 116–17 (2d Cir.1992).

Plaintiff contends that Defendants commenced the Arizona case in response to Plaintiff's complaint here. Opp'n at 7. Defendants acknowledge that the two cases share "some common

facts," but argue that the first filed rule does not apply because the substantive claims are different. Reply at 1–2.

The Court concurs with Defendants that the first filed rule does not apply. While this case and the Arizona case share substantially similar parties and underlying facts, the substantive claims are distinct. In the Arizona case, Nutritional Brands and Beverages brought civil racketeering, fraud, conversion, and breach of contract claims arising out of allegedly fraudulent business expenses DeMaria submitted during her employment. *See*, *Nutritional Brands, Inc., et al. v. DeMaria*, 2:23-cv-02405-JFM, Dkt. Entry No. 1, Ex. 3. Accordingly, different facts and law form the basis of the Arizona claims as compared to the NYLL, NYSHRL, and tort claims Plaintiff brought here.

Even if the claims were similar, the "balance of convenience . . . giv[es] priority" to the Arizona case. *Simmons*, 878 F. 2d at 79. To determine whether the first filed rule should be set aside in the interest of justice, the Court weighs the same nine factors used to decide a motion to change venue pursuant to 28 U.S.C. § 1404(a). *See*, *GlycoBioSciences, Inc. v. Nycomed US, Inc.*, 2012 WL 540928, at *4 (E.D.N.Y. Feb. 15, 2012). These factors weigh in favor of transfer.

**B.      Convenience of the Witnesses and Availability of Process**

Convenience of the witnesses is one of the most important considerations when deciding a motion to transfer venue. *See*, *Schwartz v. Marriot Hotel Serv., Inc.*, 186 F. Supp.2d 245, 249 (E.D.N.Y. 2002) (citation omitted); *See, also*, *Nieves v. American Airlines*, 700 F. Supp. 769, 772 (S.D.N.Y. 1988) (citation omitted). "The convenience of non-party witnesses is accorded more weight than that of party witnesses." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp.2d 542, 547 (S.D.N.Y. 2008) (quoting *Indian Harbor Ins., Co. v. Factory Mut. Ins. Co.*, 419 F. Supp.2d 395, 402 (S.D.N.Y. 2005)).

Defendants identified several individuals named in the complaint likely to become witnesses in this case. Defs.' Mot. at 17. All of these witnesses reside in Arizona, which is outside of the Court's subpoena power. *Id.*; Pratte Decl. ¶ 26; Fed. R. Civ. P. 45(c)(1)–(2) (100-mile limit on subpoena power). For example, Plaintiff alleges that Jason Pratte, a nonparty employee, engaged in tortious conduct during the August 16, 2023 termination meeting. SAC ¶¶ 71, 76–84. These events are central to Plaintiff's claims, and the parties are likely to seek his testimony.

By contrast, Plaintiff has not identified a single nonparty witness who resides in this District. Instead, she argues that: (1) the parties could secure any unwilling witnesses' testimony through depositions; and (2) Defendants have not provided evidence that these witnesses would be unwilling to testify. Opp'n at 4–5.

It is true that "the unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp.3d 421, 440 (S.D.N.Y. 2018) (citation omitted) (finding that this factor did not weigh in favor of transfer where nearly all witnesses were already deposed). However, Plaintiff does not explain why deposition testimony would be an adequate replacement for live testimony in this case. Depositions are available in almost every case. If Plaintiff's position were adopted, then this factor, one of the most important, would be meaningless.

Moreover, while Defendants did not provide evidence that any witness would be unwilling to testify, it does not change that the witnesses are concentrated in Arizona. *See, e.g*, *Doe v. McAdam Fin. Grp. LLC*, 2022 WL 3579700, at *11 (S.D.N.Y. Aug. 3, 2022), *report and recommendation adopted*, 2022 WL 3578569 (S.D.N.Y. Aug. 19, 2022) (convenience of the witnesses "lean[ed] toward transfer" where many nonparty witnesses resided in Massachusetts

7

outside of the court's subpoena power, even though defendants did not provide evidence that any witness would be unwilling to testify). Thus, the Court could not compel most witnesses' testimony, and, even if it could, trial in the District of Arizona would be more convenient for most witnesses in this case.

### C. Convenience of the Parties

The convenience of the parties is neutral. In analyzing the convenience of the parties, "[t]he logical starting point is a consideration of [their] residence." *U.S. Fidelity & Guar. Co. v. Republic Drug Co.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992). All three Defendants are Arizona citizens. SAC ¶¶ 10–12. Plaintiff is a New York citizen and claims that litigating in Arizona would be "seriously inconvenient" for her. *Id.* at ¶ 9; Opp'n at 5. However, as Defendants note correctly, while litigating in Arizona may be inconvenient for Plaintiff, it is equally inconvenient for Defendants and their employees to litigate here. Defs.' Mot. at 18. Plaintiff already is litigating in the District of Arizona, and her attorney has appeared *pro hac vice* alongside local counsel there. *Nutritional Brands, Inc., et al. v. DeMaria*, 2:23-cv-02405-JFM, Dkt. Entry No. 1; *Id.*, Dec. 1, 2023 Order. Accordingly, consolidating this matter with the Arizona case would be more convenient than litigating in two venues.

### D. Location of Relevant Documents and Ease of Access to Sources of Proof

The location of the relevant documents weighs slightly in favor of transfer. Plaintiff argues that technological advances have rendered this factor "moot." Opp'n at 6. It is true that this factor assumes somewhat less importance in today's "era of electronic documents, easy copying and overnight shipping." *Havener v. Gabby G Fisheries Inc.*, 2021 WL 602681, at *4 (E.D.N.Y. Feb. 12, 2021) (quoting *Larew v. Larew*, 2012 WL 87616, at *5 (S.D.N.Y. Jan. 10, 2012)). However, "it is improper to ignore [it] entirely." *N. Food I/E, Inc. v. OCM Globe Inc.*, 2022 WL 2812204, at *11 (E.D.N.Y. Mar. 28, 2022) (alteration in original).

Defendants submitted evidence that they maintain hard copy employment files in Arizona. Pratte Decl. ¶ 25. However, they did not detail the burden associated with making such documents available here. *Havener*, 2021 WL 602681 at *4 ("[T]he location of documents is entitled to little weight unless [the movant] makes a detailed showing of the burden it would incur absent transfer." (alteration in original)). Nonetheless, the fact that Defendants possess hard copy employment records in Arizona tips this factor slightly in favor of transfer. *Steen v. Assurant, Inc.*, 2023 WL 4406303, at *11 (S.D.N.Y. July 6, 2023) (finding that this factor leaned in favor of transfer even though employment records located in Georgia "could be produced with little difficulty").

E.   **Locus of Operative Facts**

The locus of operative facts weighs strongly in favor of transfer. The locus of operative facts is a "primary factor" in a motion to transfer venue. *Ruiz ex rel. E.R. v. United States*, 2014 WL 4662241, at *12 (E.D.N.Y. Sept. 18, 2014). When determining the locus of operative facts, a district court must "look to the site of events from which the claim arises" and should transfer the case where the "principal events occurred in another district and the principal witnesses are located there." *Fulton v. Newkirk*, 2021 WL 3037592, at *3 (E.D.N.Y. July 19, 2021).

Plaintiff argues that her claims are connected to New York because Defendants: (1) "sent the offer letter to [her] in New York"; (2) "agreed to have her work from New York"; (3) "reimbursed her for expenses related to maintaining a workplace in New York"; and (4) "accepted [her] services from New York for twenty-seven months." Opp'n at 2–3. However, these facts are merely incidental to Plaintiff's remote work in New York. Even if working remotely created some factual locus in this District, the fact that she was "permitted to work remotely may indicate there were multiple loci of operative facts but does not shift the *principal locus* of operative facts to New York." *Schweitzer v. Nevels*, 2023 WL 2970899, at *5 (S.D.N.Y. Apr. 17, 2023) (emphasis

9

added); *See also*, *McAdam*, 2022 WL 3579700 at *10 (transferring case where employee worked remotely in New York, but her discrimination, retaliation, and tort claims primarily arose out of a sexual assault that occurred in Massachusetts).

The Court concurs with Defendants that almost all the key events occurred in Arizona. Defs.' Mot. at 11–13, 18–19. The primary connection to this District is Plaintiff's remote work in New York. The alleged torts occurred in Arizona, and Plaintiff's discrimination, retaliation, and unpaid wage claims arise out of her termination, which also occurred in Arizona. SAC ¶¶ 70–85, 89, 104–105, 109. Additionally, many of the events leading to Defendants' alleged retaliation occurred in Arizona. *Id.* at ¶¶ 59–60 (describing in person meeting where Plaintiff objected to another employee's termination); *Id.* at ¶¶ 67–69 (describing racist remarks made at an in-person company outing). Consequently, the locus of operative facts is in Arizona.

F.  **Relative Means of the Parties**

There is no evidence regarding the relative means of the parties. Plaintiff asserts that her resources are more limited than Defendants'. Opp'n at 5. However, Plaintiff does not explain, in any detail, why she could not meet the expense of litigating in Arizona, particularly since she is defending a second case involving Defendants in Arizona. *See*, *Bombardier Capital, Inc. v. Solomon*, 2000 WL 1721138, at *4 n.11 (S.D.N.Y. Nov. 17, 2000) ("[A] party arguing for or against transfer . . . must offer documentation to show that transfer (or lack thereof) would be unduly burdensome." (citation omitted)). Accordingly, this factor does not favor either side.

G.  **Forum's Familiarity with the Governing Law**

The forum's familiarity with the governing law is considered "one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Nat'l Experiential, LLC v. Nike, Inc.*, 2021 WL 9678642, at *6 (E.D.N.Y. July 31,

2021) (quoting *Abramowitz v. Tropicana Atl. City Corp.*, 2015 WL 1014511, at *5 (E.D.N.Y. Mar. 6, 2015)). This factor is given little weight because "federal courts are deemed capable of applying the substantive law of other states." *Charlot v. Ecolab, Inc.*, 2018 WL 11427944, at *6 (E.D.N.Y. Mar. 23, 2018) (citations omitted). While this Court is more familiar with New York laws such as the NYSHRL and NYLL, the District of Arizona is perfectly capable of applying New York substantive law. Thus, this factor is neutral.

### H.  Weight Accorded the Plaintiff's Choice of Forum

Plaintiff's choice of forum is given less deference where, as here, the chosen forum has few substantive ties to the litigation. *Bank v. New York State Dep't of Agric. & Markets*, 2021 WL 2012405, at *4 (E.D.N.Y. May 20, 2021) ("Courts generally accord less deference to a plaintiff's choice of forum when the forum does not have a strong connection with the locus of operative facts."). Therefore, this factor does not weigh against transfer.

### I.  Trial Efficiency and the Interest of Justice

Finally, trial efficiency and the interest of justice weigh in favor of transfer. As the above analysis demonstrates, this District has little connection to this matter. By contrast, the "center of gravity" of this litigation is in Arizona. *See*, *Bombardier Capital*, 2000 WL 1721138 at *2 ("The core determination under Section 1404(a) is the center of gravity of the litigation.") (citation omitted). This analysis is only bolstered by the fact that the parties already are litigating in the District of Arizona. Consolidating the two actions together would serve the interests of judicial economy and trial efficiency well.

After weighing the factors set forth above, the Court finds that transfer is warranted. Plaintiff has failed to show that this case has any fundamental connection to the Eastern District of New York. Working remotely in this District, without more, is not enough.

II.     **Personal Jurisdiction**

While the Court informed the parties that it intended to consider Defendants' motion to transfer first, Plaintiff chose to address personal jurisdiction in her opposition memorandum. Jan. 31, 2024 Order; Opp'n at 7–14. Thus, the Court will address the personal jurisdiction issue.

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). "[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). "For a plaintiff to demonstrate personal jurisdiction over a defendant . . . the plaintiff must show either that the defendant was present and doing business in New York within the meaning of C.P.L.R. § 301," known as general jurisdiction, "or that the defendant committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302," known as specific jurisdiction. *Reich v. Lopez*, 2014 WL 4067179, at *11 (S.D.N.Y. Aug. 18, 2014) (internal alterations and quotations omitted) (quoting *Schultz v. Safra Nat'l Bank of New York*, 377 F. App'x 101, 102 (2d Cir. 2010)).

"In considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to plaintiff, the non-moving party, and all doubts are to be resolved in plaintiff's favor." *HomeoPet LLC v. Speed Lab., Inc.*, 2014 WL 2600136, at *5 (E.D.N.Y. Jun. 11, 2014) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir.2001)). Courts must accept the allegations in the complaint "to the extent they are uncontroverted" by the defendant's affidavits, "which the district court may also consider." *McAdam*, 2022 WL 3579700, at *4–5 (considering defendants' affidavits and exhibits) (alteration omitted). However, a court may not rely on a defendant's affidavit to the extent it contains hearsay statements. *Zobay v. MTN Grp.*

*Ltd.*, 2023 WL 6304961, at *8 (E.D.N.Y. Sept. 28, 2023).

Here, the Court lacks personal jurisdiction over Defendants. As Plaintiff appears to concede, this Court does not have general jurisdiction over Defendants, as they are all Arizona citizens. *See*, Opp'n at 7–8 (specific jurisdiction is available "[w]here general jurisdiction is not"); *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp.3d 264, 272 (E.D.N.Y. 2016) ("Aside from the 'exceptional case,' . . . a corporation is at home and subject to general jurisdiction *only* in a State that represents its formal place of incorporation or principal place of business." (citation omitted and emphasis in original)). Instead, Plaintiff relies on specific jurisdiction.

Plaintiff contends that Defendants are subject to specific jurisdiction pursuant to two provisions of New York's long arm statute, N.Y. C.P.L.R. § 302(a)(1) and (3). Those provisions permit courts to exercise personal jurisdiction over any nondomiciliary who: "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . . (3) commits a tortious act without the state causing injury to person or property within the state . . . if he . . . (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or . . . (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a).

Some courts have found that personal jurisdiction extends to nondomiciliary employers that knowingly and purposefully create an ongoing relationship with an employee working remotely in New York. *See*, *McAdam*, 2022 WL 3579700 at *5 (collecting cases); *Williams v. Preeminent Protective Servs., Inc.*, 81 F. Supp.3d 265, 271–72 (E.D.N.Y. 2015) (finding personal jurisdiction where "[d]efendants hired [the plaintiff] knowing that she would live and work in Brooklyn, and 'continued their communications with plaintiff here' for a sustained period of time"

(citation omitted)); *Manning v. Erhardt + Leimer, Inc.*, 2020 WL 759656, at *8 (W.D.N.Y. Feb. 7, 2020) (exercising personal jurisdiction where defendants recruited plaintiff "[k]nowing that [he] was unwilling to relocate from his home in New York"); *Kumar v. Opera Solutions OPCO, LLC*, 2021 WL 4442832, at *8–9, (S.D.N.Y. Sept. 28, 2021) (employer designated employee who "planned to [work from New York] indefinitely" as a "remote employee" and "facilitated her remote work" by issuing her a company laptop and phone with a New York phone number).

However, these cases are distinguishable because, as Plaintiff acknowledges, Defendants allowed Plaintiff to work remotely, but always wanted her to relocate to Arizona. *See*, SAC ¶¶ 41, 44, 72–74; *Beeney v. InSightec, Inc.*, 2014 WL 3610941, at *1, 3–4 (S.D.N.Y. July 7, 2014) (no personal jurisdiction where employer allowed employee to work remotely on a temporary basis while searching for housing in Texas); *McAdam*, 2022 WL 3579700 at *5–6 (no personal jurisdiction where employee's "location [was] incidental to her work for the company" and she "did not perform any work for [defendant] that was directed at New York"). During her employment negotiations, Plaintiff told her recruiter "I would relocate myself and my daughter," and asked whether "relocation fees" would be "funded by the company." Pratte Decl. Ex. B (emphasis added).[1] Furthermore, Defendants submitted uncontroverted evidence that Plaintiff's position required relocation, and she looked at houses and schools Arizona several times. *Id.* at ¶¶ 6, 12–13 & Ex. A. Indeed, Plaintiff admits that Defendants terminated her, at least in part, due to her failure to relocate. SAC ¶¶ 72–74. Plaintiff cannot manufacture personal jurisdiction by working remotely in New York against Defendants' wishes, particularly where there is no evidence that Defendants' hired her as part of an effort to target New York. *See*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) (defendant must "purposefully

---

[1] Plaintiff's statements are nonhearsay admissions by a party opponent. Fed. R. Civ. Evid. 801(d)(2).

avail[] itself of the privilege of doing business in the forum"). Accordingly, Defendants did not "transact business" in New York pursuant to § 302(a)(1).

In light of the Court's finding that Defendants did not sufficiently "transact business" in New York pursuant to § 302(a)(1), Plaintiff's claim of jurisdiction pursuant to § 302(a)(3) fails as well. Even if Defendants' conduct caused an injury in New York, Plaintiff has not alleged sufficiently that Defendants solicited business, derived substantial revenue, or reasonably should have expected their acts to have consequences in New York. *See*, N.Y. C.P.L.R. § 302(a)(3). Indeed, Defendants submitted evidence that little to none of Nutritional Brands and Beverages' sales are derived from New York. Pratte Decl. ¶¶ 4–5.

The lack of personal jurisdiction only buttresses this Court's decision to transfer this case. "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel v. American Board of Emergency Medicine*, 428 F.3d 408, 435 (2d Cir. 2005). "[W]hether or not venue [is] proper, lack of personal jurisdiction [can] be cured by transfer to a district in which personal jurisdiction could be exercised, with the transfer authority derived from [28 U.S.C. § 1406(a) or § 1404(a)]." *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000). The interest of justice merits transferring this case to the District of Arizona.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion to transfer is granted.

SO ORDERED.

Dated: Brooklyn, New York
September 11, 2024

/s/
DORA L. IRIZARRY
United States District Judge